UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CRYSTAL ANN B.,**

    **Plaintiff,**

v.                                                  **Civil Action 2:25-cv-322**
                                                        **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

**OPINION AND ORDER**

Plaintiff, Crystal Ann B., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 7), the Commissioner's Memorandum in Opposition (ECF No. 9), Plaintiff's Reply (ECF No. 10), and the administrative record (ECF No. 6). For the reasons that follow, the Court **AFFIRMS** the Commissioner of Social Security's non-disability determination.

**I.**    **BACKGROUND**

Plaintiff protectively filed her applications in June and July 2021, alleging that she became disabled beginning on September 30, 2019. After Plaintiff's applications were denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held a telephonic hearing on October 19, 2023, at which Plaintiff, represented by counsel, appeared and testified. A vocational expert ("VE") also appeared and testified. On December 26, 2023, the ALJ issued

an unfavorable determination, which became final on January 27, 2025, when the Appeals Council declined review. (R. at 18–28, 1–6.)

Plaintiff seeks judicial review of that unfavorable determination. She contends that the ALJ's determination is not supported by substantial evidence because the ALJ erred when evaluating medical opinion evidence and prior administrative findings. (Pl.'s Statement of Errors 7–16, ECF No. 7; Reply 1–6.) Defendant correctly contends that Plaintiff's contentions of error lack merit. (Def.'s Mem. in Opp'n 4–9, ECF No. 9.)

## II.   THE ALJ's DECISION

The ALJ issued the unfavorable determination on December 26, 2023. (R. at 28.) The ALJ initially determined that Plaintiff met the insured status requirements through September 30, 2024. (*Id.* at 19.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

had not engaged in substantial gainful activity since September 30, 2019, her alleged disability onset date. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: degenerative disc disease; lumbar spondylosis; osteoarthritis; reflex sympathy dystrophy; personality disorder; depression; anxiety; and post-traumatic stress disorder. (*Id*. at 20.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 21.)

> The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except after standing for one hour, she would need to sit for 20 minutes without interruption to work activity; she can stand and/or walk for four hours in a workday; she can frequently operate foot controls; she can never climb ladders, ropes, and scaffolds; she can occasionally crawl and climb ramps and stairs; she can frequently balance as that term is defined in the Dictionary of Occupational Titles (DOT), stoop, kneel, and crouch; she can tolerate occasional exposure to extreme cold and vibration; she must avoid exposure to all hazards; the claimant can carry out simple instructions; she cannot perform work requiring a specific production rate such as an assembly line or requiring hourly quotas; she can occasionally interact with supervisors, coworkers, and the public; and she can deal with occasional changes in routine work setting.

(*Id*. at 22.)

At step four, the ALJ relied on testimony from the VE to determine that Plaintiff could not perform her past relevant work as a material handler. (*Id.* at 26–27.) Relying on the VE's testimony again at step five, the ALJ determined that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of merchandise marker, mail clerk,

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

3

and small product assembler. (*Id*. at 27.) Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 28.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a

substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As explained above, Plaintiff contends that the ALJ's determination lacked substantial support because the ALJ erred when evaluating medical opinion evidence and prior administrative findings from state agency reviewers. This contention lacks merit.

**A. Regulations Governing the Evaluation of Relevant Evidence**

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[3] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id.*

---

[3] Because Plaintiff's applications were filed in 2021, they are subject to regulations governing applications filed after March 27, 2017.

5

B.   The Note from Plaintiff's Physician Assistant ("PA")

Plaintiff challenges the ALJ's evaluation of a note written by her PA. That challenge lacks merit.

In 2021, Plaintiff's PA wrote that Plaintiff attempted to "start back" to work at Amazon but that her pain levels had increased due "to being on her feet walking a lot." (R. at 1730.) The PA also wrote that Plaintiff's employer was being "strict" about restrictions and accommodations and that Plaintiff "would need a doctor's note to use the elevator or receive ice or athletic tape" from an aid station at work. (*Id*.) The PA prepared such a note for Plaintiff and included a copy of its text in her treatment records. (*Id*.)

> The note stated as follows:
>
> [Plaintiff] is a patient under my care in pain management, currently being treated back and foot conditions. While she has no specific physical limitations or restrictions under my care, based on her conditions and my care plan, I do recommend she use the elevator instead of multiple flights of stairs in a day to prevent further injury. Additionally, she may need occasional ice placement over right foot or stability athletic taping for stabilization if brace is not on for flare ups. With the nature of her injury, she may need occasional breaks to sit and rest for 5-10 minutes at a time to relieve pressure on the foot and leg and back.
>
> If you have any questions or concerns, please don't hesitate to call.

(*Id*.) The ALJ summarized the information in this note as follows:

> Caitlin Cahill, PA-C, opined that the claimant should utilize the elevator instead of "multiple flights of stairs" to prevent further injury. She would also need "occasional" breaks to sit and rest for between five and ten minutes to relieve foot and spine pain. (16F/41).

(*Id*. at 25.)

> The ALJ then explained that the note was not persuasive, writing as follows. (*Id*.)
>
> This opinion is supported by the provider's treating relationship with the claimant. Although supported, this opinion is unpersuasive due to its lack of specificity and general inconsistency with the record. For example, finding that the claimant would need to take occasional breaks lasting up to 10 minutes is inconsistent with the

6

> claimant's testimony that she was able to perform heavy exertional work during the period relevant to this case. (Hearing).

(*Id*.) As this discussion demonstrates, the ALJ determined that the note was supported by the PA's treating relationship with Plaintiff but that it was unpersuasive due to its lack of specificity and general inconsistency with the record. (*Id*.)

The Court finds that the ALJ did not err when discounting the PA's note for lack of specificity. The PA *recommended* that Plaintiff take the stairs and indicated that Plaintiff *may* need occasional ice or taping *if* she was not wearing a brace, and that she *may* need occasional breaks to relieve foot and spine pain. (*Id*. at 1730.) Equivocal statements such as these are speculative, and thus, they do not constitute functional limits that the ALJ was required to consider for inclusion in Plaintiff's RFC. *See Christina L. v. Comm'r of Soc. Sec.*, No. 2:24-CV-1156, 2024 WL 4833794, at *8–9 (S.D. Ohio Nov. 20, 2024) (citing *Earley v. Comm'r of Soc. Sec.*, Case No. 2:19-CV-53, 2020 WL 1080417, at *4 (S.D. Ohio Mar. 6, 2020) (explaining that "[a]n ALJ commits no error when disregarding speculative or ambiguous limitations that do not definitively mandate that a claimant cannot perform a specific task or operate in a particular manner")). *See also Graham v. Comm'r Soc. Sec.*, No. 1:18-CV-1939, 2019 WL 4451366, at *5 (N.D. Ohio Sept. 17, 2019) (finding no violation of SSR 96-8p where the ALJ failed to explain why he did not adopt specific limitations because, *inter alia*, the at-issue limitations "were not definitive as they indicated that Plaintiff '*may* require some repetition' as to instructions and '*may*' need assistance in making independent decisions regarding work goals"); *Slivka v. Berryhill*, No. 1:17-CV-01076, 2018 WL 3340388, at *9 (N.D. Ohio May 29, 2018), *report and recommendation adopted*, 2018 WL 3336461 (N.D. Ohio July 5, 2018) ("To treat the *possible* limitations floated by Dr. Matyi as an affirmative finding that such limitations are mandated would improperly alter the contents of the medical source's opinion.")). This conclusion is

7

reinforced by the PA's explicit statement that Plaintiff "[had] no specific physical limitations or restrictions under my care." (R. at 1730.)

Because the PA's statements do not constitute definitive limitations, the ALJ did not err when discounting them for lack of specificity. *Lanning v. Comm'r of Soc. Sec.*, No. 5:20 CV 1676, 2022 WL 122643, at *3 (N.D. Ohio Jan. 13, 2022) (explaining that "[t]he use of equivocal rather than definitive language such as 'some' and 'may' is valid reason to discount opinion evidence"). Plaintiff's contrary contention lacks merit.

**C.     Prior Administrative Findings from the State Agency Reviewers**

Plaintiff additionally challenges the ALJ's evaluation of prior administrative findings from state agency reviewers. This contention also lacks merit.

The ALJ first summarized the reviewers' findings as follows:

> State agency psychological consultant, Kristen Haskins, Psy.D., found that the claimant had a mild limitation in her ability to understand, remember, or apply information, a moderate limitation in her ability to interact with others, a moderate limitation in her ability to concentrate, persist, or maintain pace, and a moderate limitation in her ability to adapt or manage oneself. (3A/5). On reconsideration, State agency psychological consultant, Katherine Fernandez, Psy.D., affirmed Dr. Haskins' findings. (8A/4). The State agency psychological consultants further opined that the claimant could complete short tasks in a setting free of distractions from others, she could interact superficially in a work setting, and she could adjust to minor changes in the work setting, but she would need major changes to be gradually introduced. (3A/9-10, 8A/8-10).

(R. at 26.)

The ALJ then determined that these findings were only minimally persuasive, explaining as follows:

> The opinions provided by the State agency psychological consultants are only somewhat supported, as the evidence presented at the initial and reconsideration levels generally shows that the claimant had a normal mood and affect and normal behavior. (5F/7, 7F/33-34). These opinions are minimally persuasive due to inconsistencies with the evidence presented at the hearing level. For instance, while finding that the claimant would experience no more than moderate limitations in

8

>any area of mental functioning is consistent with examination evidence presented at the hearing level showing that her cognition was intact, she was alert and oriented, and she had a normal mood. (15F/54). However, finding that the claimant could interact "superficially" in a work setting is somewhat vague, and generally inconsistent with treatment records wherein the claimant is described as pleasant and cooperative. (17F/89, 18F/72).

(*Id.*) As this discussion demonstrates, the ALJ determined that these findings were minimally persuasive because they were only partially supported, and they were inconsistent with record evidence. (*Id.*) The ALJ also explained that the reviewers' superficial interaction limit was also "somewhat vague" and generally inconsistent with other treatment records describing Plaintiff as pleasant and cooperative. (*Id.*)

Plaintiff first contends that the ALJ erred when evaluating the reviewers' superficial interaction limit because the ALJ wrongly described this limit as vague. And to be sure, this Court has frequently explained that a "'superficial interaction' is a well-recognized, work-related limitation." *Hutton v. Comm'r of Soc. Sec.*, No. 2:20-CV-339, 2020 WL 3866855, at *5 (S.D. Ohio July 9, 2020), *adopted and aff'd sub nom.*, *Hutton v. Comm'r of Soc. Sec. Admin.*, 2020 WL 4334920 (S.D. Ohio July 28, 2020). *See also Neal B. v. Comm'r of Soc. Sec. Admin.*, No. 3:23-CV-75, 2024 WL 963713, at *5 (S.D. Ohio Mar. 5, 2024) ("Contrary to the ALJ's initial conclusion, 'superficial' contact is a well-recognized work-related limitation."); *Markcus C. v. Comm'r of Soc. Sec.*, No. 2:22-CV-1917, 2023 WL 1775612, at *5 (S.D. Ohio Feb. 6, 2023), (same) *adopted and aff'd*, 2023 WL 2162261 (S.D. Ohio Feb. 22, 2023); *Kenneth A. v. Comm'r of Soc. Sec.*, No. 3:22-CV-110, 2022 WL 17484356, at *5 (S.D. Ohio Dec. 7, 2022) (same). Indeed, the Sixth Circuit has acknowledged that a superficial interaction limit is a well understood work limitation. *See Preston v. Comm'r of Soc. Sec.*, No. 22-4026, 2023 WL 4080104, at *4 (6th Cir. June 20, 2023) (quoting *Miles v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-410, 2021 WL 4905438, at *5 (S.D. Ohio Oct. 21, 2021) ("We find nothing wrong in the

9

ALJ's use of the term 'superficial,' a 'well-recognized work-related limitation,' in the interrogatories to the vocational expert.").

Nevertheless, the ALJ discredited the reviewers' superficial interaction limit because it was somewhat vague *and* because it was generally inconsistent with treatment records describing Plaintiff as pleasant and cooperative. (R. at 26.) Substantial evidence supports that latter explanation. The ALJ cited two treatment records indicating that Plaintiff was cooperative. (*Id*. (citing R. at 2048, 2156).) Elsewhere in the determination, the ALJ also explained that treatment records described Plaintiff as pleasant and/or cooperative. (*Id*. at 21, 24 (citing R. at 1077, 1434, 2300).) The Court finds that this is a defensible description of the record. Treatment notes routinely indicated that Plaintiff was cooperative. (*Id*. at 559, 635, 706, 1586, 1911, 2051, 2054, 2057, 2060, 2195, 2270, 2357, 2366, 2497, 2605.) Likewise, a provider described Plaintiff as pleasant on at least one occasion. (*Id*. at 1434, 1437.)

Plaintiff, however, contends that the specific records the ALJ cited when evaluating the reviewers' superficial interaction limit did not describe her as pleasant. (Pl.'s Statement of Errors 13, ECF No. 7.) But as explained above, the ALJ elsewhere noted that treatment records described Plaintiff as pleasant and/or cooperative. (R. at 21, 24 (citing R. at 1434).) An ALJ's determination must be read as a whole. *See Crum*, 660 F. App'x at 457 (6th Cir. 2016) (affirming an ALJ's evaluation of opinion evidence where "[e]lsewhere in her decision, the ALJ laid out in detail the treatment records" that undercut the opinion). Having read the ALJ's determination in this manner, the Court finds that the ALJ's reasons for discounting the reviewers' superficial limit were adequately articulated and supported by substantial evidence.

Plaintiff additionally contends that the ALJ erred by failing to explain why the reviewers' other limits were omitted from her RFC without an explanation. (Pl.'s Statement of

10

Errors 15, ECF No. 7.) In support, she cites cases where ALJs gave "weight" to medical opinions but then omitted opined limits from those opinions without explaining those omissions. *See Allen v. Colvin*, No. 3:13CV000352, 2014 WL 6685348, at *6 (S.D. Ohio Nov. 25, 2014), (finding ALJ erred when giving some weight to state agency reviewers' opinions but then omitting their opined limits from an RFC without adequate explanation), *aff'd and adopted*, 2014 WL 7184551 (S.D. Ohio Dec. 15, 2014); *Jones v. Comm'r of Soc. Sec.*, No. 3:13-CV-019, 2014 WL 340427, at *5 (S.D. Ohio Jan. 30, 2014), (finding ALJ erred when giving considerable weight to a state agency reviewer's opinion but then omitting her opined limits from an RFC without adequate explanation), *adopted in part, rejected in part*, 2014 WL 1050042 (S.D. Ohio Mar. 17, 2014).

In this case, however, the ALJ did *not* give the reviewers' other findings weight. Instead, the ALJ here *discredited* the reviewers' findings, determining that they were only minimally persuasive, in part, because they were not well supported. (R. at 26.) The ALJ explained that these findings lacked full support because treatment records showed that Plaintiff had normal mood, affect, and behavior. (*Id.* (citing R. at 897, 1011–1012.) Substantial evidence supports that explanation—treatment records regularly indicated that Plaintiff had normal or appropriate mood or affect or behavior. (*Id.* at 559, 573, 604, 635, 706, 722, 730, 737, 745, 1469, 1475, 1493, 1626, 1693, 1707, 1727, 1756, 1788, 1798, 1815, 1833, 1843, 1852, 1869, 1881, 1890, 1922, 1931, 1951, 2195.)

The ALJ additionally explained that the reviewers' other findings were only minimally persuasive because they were inconsistent with treatment records indicating that Plaintiff's cognition was intact, she was alert and oriented, and that she had normal mood. (*Id.* (citing R. at 1626).) Substantial evidence supports that explanation as well. Treatment records indicated that Plaintiff's comprehension and attention were intact. (*Id.* at 1469, 1475, 1626.) Plaintiff's thought

11

processes were described by providers as normal, or coherent and logical with appropriate insight. (*Id*. at 1788, 1798, 1815, 1843, 1852, 1881.) Plaintiff was also routinely found to be alert and oriented. (*Id*. at 559, 573, 604, 635, 706, 721, 730, 737, 1469, 1475, 1586, 1626, 1787, 1869, 1911, 1922, 1931, 1951, 2195, 2357, 2366, 2497.) And as explained above, records also regularly indicated that Plaintiff had normal or appropriate mood.

Plaintiff criticizes Defendant's reliance mental health information in notes from providers who treated her physical ailments. (Pl.'s Statement of Errors 14, ECF No. 13, Reply 4–5, ECF No. 10.) But when crafting an RFC, an ALJ is obligated to consider "all the relevant evidence" in a claimant's case record, including records from treatment for all a claimant's ailments, regardless of whether the treatment was for the effects of the ailment at issue. §§ 404.1545(a)(1); 416.945(a)(1).

Plaintiff further faults Defendant for citing records that the ALJ did not reference directly. (Reply 4, ECF No. 10.) She contends this amounts to an impermissible *post hoc* rationalization. (*Id*.) But the ALJ made general observations about the record and then cited specific examples to illustrate those observations. (*See e.g*., R. at 24 ("the claimant had normal mood and affect (7F/34, 9F/13, 11F/16, 13F/6, 14F/7, 18F/216)")). Defendant's additional citations to other consistent records merely reinforces the ALJ's general observations; they are not a new rationale. A true *post hoc* rationalization would involve offering different, record-based reasons that the ALJ never relied upon to support the same determination.[4]

---

[4] Plaintiff correctly notes that some of Defendant's string citations to the record include duplicate references to notes from the same doctor's appointment. (Reply 4, ECF No. 10.) This duplication appears to have resulted from certain appointment notes being produced multiple times. The Court has taken these redundancies into account.

Finally, Plaintiff points to other record evidence that describes Plaintiff's struggles with her mental health issues. (Pl.'s Statement of Errors 14, ECF No. 7.) But where, as here, substantial evidence supports an ALJ's determination, the Court will not disturb it even if substantial evidence could also support a different result. *Emard*, 953 F.3d at 849 (quoting *Crum*, 921 F.2d at 644).

## V. CONCLUSION

For all the foregoing reasons, the Court finds that the ALJ did not reversibly err when evaluating a note from Plaintiff's PA and administrative findings from state agency reviewers. The Commissioner's non-disability determination is, therefore, **AFFIRMED**, and Plaintiff's Statement of Errors is **OVERRULED**.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE